## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONG PHUONG BAKERY, INC.,**<br>**Plaintiff,** | **CIVIL ACTION NO. 21-01109** |
| **versus** | **SECTION: J (1)** |
| **THE GEMINI SOCIETY, LLC,**<br>**Defendant.** | **Judge: Barbier** |
| | **Magistrate Judge: van Meerveld** |
| | **JURY TRIAL DEMANDED** |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

The Gemini Society, LLC ("Gemini Society") hereby responds to the First Amended Complaint ("FAC"), ECF No. 20, filed by Dong Phuong Bakery, Inc. ("DPB") by entering a general denial and denying all allegations in the FAC, except as expressly admitted as follows:

Gemini Society denies the allegations in paragraph 1, except to admit that Gemini is a Texas company.

Gemini Society denies the allegations in paragraph 2.

Gemini Society denies the allegations in paragraph 3, except to admit that DPB is a Louisiana corporation with its principal place of business in New Orleans, and that it operates a bakery.

Gemini Society denies the allegations in paragraph 4, except to admit that Gemini Society is a Texas limited liability company with its principal place of business in Austin, Texas, and that Dezidario Ramirez is its agent for service of process.

Gemini Society denies the allegations of paragraphs 5-9.

Gemini Society denies the allegations in paragraph 10 for lack of information sufficient to admit or deny them.

Gemini Society denies the allegations of paragraphs 11-12, except to admit that the 2017 Statement of Work speaks for itself.

Gemini Society denies the allegations in paragraph 13, except to admit that the 2018 Statement of Work speaks for itself.

Gemini Society denies the allegations in paragraph 14, except to admit that Gemini Society had access to and exercised control over the DPBakeshop website until the parties relationship ended in 2021.

Gemini Society denies the allegations in paragraph 15, except to admit that in 2019 the parties agreed to extend the 2018 Statement of Work for another year and minimum fees would be $60,000 and that the email dated December 6, 2018, speaks for itself.

Gemini Society denies the allegations in paragraph 16, except to admit that the 2020 Statement of Work speaks for itself.

Gemini Society denies the allegations in paragraph 17, except to admit that the 2021 Statement of Work speaks for itself.

Gemini Society denies the allegations in paragraph 18 for lack of information sufficient to admit or deny them.

Gemini Society denies the allegations in paragraphs 19-21.

Gemini Society denies the allegations in paragraph 22, except to admit that DPB registered the DP Bakeshop logo with the Louisiana Secretary of State on August 4, 2017.

Gemini Society denies the allegations in paragraphs 23-24.

Gemini Society denies the allegations in paragraph 25, except to admit that the images shown are King Cake boxes designs authored by Gemini Society.

Gemini Society denies the allegations in paragraph 26.

Gemini Society denies the allegations in paragraph 27, except to admit that Gemini granted DPB a limited license to certain of Gemini's Materials as more fully set forth in the counterclaim, below.

Gemini Society denies the allegations in paragraph 28 for lack of information sufficient to admit or deny them.

Gemini Society denies the allegations in paragraph 29, except to admit that it filed the '808 application.

Gemini Society denies the allegations in paragraphs 30-32

Gemini Society denies the allegations in paragraph 33, except to admit that DPB terminated its relationship with Gemini Society.

Gemini Society denies the allegations in paragraph 34, except to admit that following termination of DPB's right to use Gemini's materials it sent the email attached as Exhibit H to the FAC, which speaks for itself.

Gemini Society denies the allegations in paragraph 35.

Gemini Society denies the allegations in paragraph 36, except to admit that DPB sent the letter attached as Exhibit I to the FAC, which speaks for itself.

Gemini Society denies the allegations in paragraph 37, except to admit that Gemini Society sent DPB an invoice for $268,151.31 and demanded that DPB cancel its Louisiana state registration for the DP Bakeshop logo.

Gemini Society denies the allegations in paragraph 38.

Gemini Society denies the allegations in paragraph 39, except to admit that Gemini offered a Settlement and Release Agreement on May 18, 2021.

Gemini Society denies the allegations in paragraph 40.

Gemini Society denies the allegations in paragraph 41, except to admit that DPB has paid Gemini Society over $315,000 since 2017.

Gemini Society denies the allegations in paragraph 42.

Gemini Society denies the allegations in paragraph 43, except to admit that Gemini has offered king cake boxes for sale to third parties.

Gemini Society denies the allegations in paragraph 44.

Gemini Society denies the allegations in paragraphs 45-68.

Gemini Society denies the allegations in paragraph 69, except to admit that Gemini Society granted DPB a limited license to certain of Gemini's Materials as more fully set forth in the counterclaim, below.

Gemini Society denies the allegations in paragraphs 70-90.

Gemini Society denies the allegations in paragraphs 91, except to admit that Gemini Society has offered king cake boxes for sale to third parties.

Gemini Society denies the allegations in paragraphs 92-94 and the Request For Relief.

## AFFIRMATIVE DEFENSES

1.      DPB's FAC fails to state a claim upon which relief may be granted.

2.      The Court lacks personal jurisdiction over Gemini Society.

3.      DPB's claims are barred, in whole or in part, by laches, prescription, and/or the applicable statute of limitations.

4.      DPB's claims are barred, in whole or in part, by waiver, estoppel, equitable estoppel, licensee estoppel, unclean hands, and other equitable doctrines.

5.      DPB's claims are barred, in whole or in part, by DPB's failure to mitigate its losses.

6.      DPB's claims are barred, in whole or in part, by DPB's contributory negligence.

7.      DPB's claims are barred, in whole or in part, by a right of set off or offset.

8.      DPB's claims are barred, in whole or in part, by failure to perform obligations owed to Gemini Society.

9.      DPB's claims are barred, in whole or in part, by its own anticipatory breach of the agreements it now asks the court to interpret and/or enforce.

10.     DPB's claims are barred, in whole or in part, by its lack of damages.

## COUNTERCLAIMS

On information and belief, and reserving its objections to personal jurisdiction, Gemini Society alleges:

## INTRODUCTION

1.      The Garza and Ramirez families were once close friends and social companions. For many years, they collaborated and did business together on the basis of mutual trust and confidence. In 2017, their businesses, Gemini Society and DPB, formed a joint venture in which Gemini Society invested more than four years and millions of dollars' worth of work creating an e-commerce website, expanding into new markets, developing new products and business strategies, and creating new brand experiences (among other work by Gemini Society) and in which Gemini Society and DPB agreed they would both participate in the venture's financial success over many years to come. While the venture made millions of dollars for DPB, Gemini Society lost hundreds of thousands of dollars, which the parties understood and agreed would be recouped from license fees in future years. Over the past 12 months, however, DPB concocted a scheme to renege on DPB's financial commitments to Gemini Society, cut out Gemini Society from the joint venture, interfere with Gemini Society's contracts with its existing vendors and contractors, defame and destroy Gemini Society's reputation, and kill Gemini Society's prospective business relationships.

## PARTIES

2.      Counterclaim plaintiff Gemini Society is a Texas limited liability company, and all its members are individuals who reside in Austin, Texas, and are citizens of Texas. All work performed and all communications by Gemini Society were from its offices in Austin, Texas.

3.      Counterclaim defendant Dong Phuong Bakery, Inc., formerly known as Dong Phuong Oriental Bakery, Inc., is a Louisiana corporation with its principal place of business at 14207 Chef Menteur Highway, New Orleans, LA 70128.

4.      Counterclaim defendant Linh Garza is the President of DPB. She resides in Dallas, Texas, and she is a citizen of Texas.

5.      Counterclaim defendant Huong Tran is the Vice President of DPB and a shareholder of DPB. She resides in New Orleans, Louisiana, and she is a citizen of Louisiana. She supervises and oversees the day-to-day operations of DPB.

### JURISDICTION

6.      Under 28 U.S.C. §§ 1331 and 1338(a), the court has subject matter jurisdiction over Gemini Society's claims that arise under the laws of the United States, including the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*., and federal trademark law, including the Lanham Act, 15 U.S.C. § 1051, *et seq*. Under 28 U.S.C. §§ 1367 and 1338(b), the Court also has jurisdiction over Gemini Society's state law claims because those claims are so related to Gemini Society's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts and/or they are claims of unfair competition that are being joined with a substantial and related claim under federal trademark laws.

### BACKGROUND

7.      Before this litigation, Deziderio Ramirez and Ruben Garza had been friends for nearly 20 years. In 2002, they met while working at DSGN Associates, a Dallas-based design and architecture firm. They worked together building franchises for regional and international clients, including retail, movie, and restaurant chains. On their projects, Mr. Ramirez handled brand identity work, and Mr. Garza handled architectural design.

8.      In 2006, Mr. Ramirez and his wife, Nelly Paulina Ramirez, decided to leave Dallas and make a new home to Austin, and Mr. Garza helped them move. Because Mr. Garza had attended the University of Texas at Austin, he introduced the Ramirezes to the city and his network of friends in the city.

9.      At some point, Mr. Garza began dating Linh Garza (then Linh Tran). Mr. Ramirez first met her at a holiday party for DSGN Associates, where Mr. Garza had brought her as his date. They later married, and the Garzas and Ramirezes remained close.

10.      Mr. Ramirez eventually left DSGN Associates, and he began working in-house at a leading international technology company.

11.      Mrs. Garza's family owns Dong Phuong Oriental Bakery, Inc. (i.e., DPB) and Orient Dong Phuong Restaurant, Inc. ("DP Restaurant"). For many years, DPB was operated by Mrs. Garza's parents, husband and wife Trung Tran and Huong Tran. After Mr. Tran passed away, Mrs. Ramirez became the President of DPB in 2011.

12.      In 2012, Mr. Ramirez co-founded Gemini Society. Since its founding, Gemini Society has worked with world famous brands to create unique brand experiences and brand identity systems. Gemini creates comprehensive strategies for social media, product design and development, merchandizing, go-to market plans, e-commerce platforms, and other business information. This development work and strategies are generally treated as confidential and proprietary business information, including (among other reasons) because they would be highly valuable to the competitors of Gemini Society's clients.

13.      In November 2016, the Garzas and Ramirezes attended the Texas Book Festival together.

14.     While at the festival, Mrs. Garza asked Mr. Ramirez for branding advice for her family bakery, which was then still called Dong Phuong Oriental Bakery, Inc. At the time, the bakery and restaurant used the following logo:



15.     Mrs. Garza told Mr. Ramirez that the bakery had operated for decades without investing in branding. Although the bakery had a good reputation in the Vietnamese community in New Orleans, sales had plateaued, and she felt the bakery needed a new brand that would appeal to them and grow beyond its Vietnamese roots. She wanted to expand wholesale sales and to wrap vans with the new logos to increase the visibility of the bakery's wholesale business.

16.     In 2016, DPB had no brand strategy, no social media strategy, no product design and development pipeline, and no e-commerce strategy or platform.

17.     In 2016, a simple, static website was used by both DPB and DP Restaurant. The website did not have an e-shop or e-commerce functionality. Customers could not place orders online.

18.     As of 2016, DPB had annual sales of less than $1 million, and its sales were stagnant.

19.     Following the discussion at the 2016 Texas Book Festival and continuing into early 2017, Mrs. Garza met with the principals of Gemini Society to discuss how DPB and Gemini Society could work together.

20.     Since Mr. Ramirez and Mr. Garza had worked for national and international franchises during their time at DSGN Associates, Mrs. Garza expressed interest in franchising DPB's recipes and position the business for a sale. Mrs. Garza even tried to open a second bakery in Dallas, Texas, but it failed.

21.     In a typical franchise agreement, the brand owner licenses to franchisees the brand and proprietary and confidential business information, and, in return, the franchisees pay a fee. There is no expectation that the franchisees own the licensed brand or business information.

22.     DPB needed help. But DPB could not afford Gemini Society's services at the rates Gemini Society normally charged its clients. On many matters, Gemini Society charged six-figure fees for projects ranging 1 to 3 months. For work spanning many months or years, Gemini Society would need to charge an arms-length client seven-figure fees, not only to cover Gemini Society's costs but also because of the opportunity cost of forgoing projects from other paying clients.

23.     So, instead of retaining Gemini Society on an arms-length fee-for-service basis, in early 2017 DPB and Gemini Society formed a joint venture. In essence, Gemini Society agreed to create a franchise-capable platform, which Gemini Society would license to DPB, and DPB agreed to license Gemini's Materials (defined below) and pay Gemini Society fees, including a percentage of its sales. On the basis of the decades' long relationship between the Garzas and Ramirezes, this

established a special relationship of confidence and trust between the parties to act primarily for the other's benefit.

24.     Under the joint venture, Gemini Society and DPB shared economic risks and benefits. DPB risked that its sales would not increase enough to justify the fees it agreed to pay Gemini Society, and Gemini Society risked that it could take many years for Gemini Society's fees to allow it to recoup its investment plus a reasonable profit. DPB also shared in Gemini Society's losses with the understanding the DPB (and other future licensees and franchisees) would pay fees to Gemini Society in current and future years to offset such losses. On the other hand, because Gemini's fees were based in part on a percentage of DPB's sales, both parties stood to benefit from increased sales by DPB. DPB fulfilled food orders placed through the e-shop, set product prices, and paid fees to Gemini Society.

25.     The business that DPB and Gemini co-owned included the e-shop, Reseller Program (defined below), and future opportunities to market boxed products and franchises.

26.     Gemini Society treated DPB like a joint venture partner by sharing with DPB access to its vendors and other business relationships. In communications to these and other third parties, Gemini Society routinely introduced DPB as its business partner. DPB never objected to Gemini Society's references to their partnership, either to Gemini Society or in communications with third parties. Rather, DPB commercially benefitted from these relationships and from holding itself as a business partner of Gemini Society.

27.     At great expense, Gemini Society created a new DP Bakeshop and Dong Phuong Banh Mi & Baked Goods brand identity and management strategy. This included strategies for social media, creative and art direction, product and product packaging design and development, product naming and positioning, merchandizing, digital experiences, and e-commerce platforms,

and DPB agreed and acknowledged that Gemini retained ownership of all intellectual property in the brands and other materials it created (collectively, "Gemini's Materials").

28.     Examples of Gemini's Materials include the DP Bakeshop Mark, the Dong Phuong Banh Mi & Baked Goods logo, the mural painted on the building shared by DPB and DP Restaurant, van wraps, King Cake Box designs, Moon Cake Box designs, Bahn Mi Box designs, the DPBakeshop.com website, and website splash pages for King Cakes, Moon Cakes, and Bahn Mi.

29.     Gemini's Materials also included plans, methods, go-to market strategies, and other proprietary and confidential business information that Gemini Society developed, both to enhance DPB's sales and customer brand experiences and to increase the marketability of the brand to other potential licensees and franchisees. Such business information was not generally known, it was protected as trade secrets of Gemini Society, and DPB understood and agreed to limit its use and disclosure.

30.     In anticipation of future franchising and licensing opportunities, DPB understood that Gemini Society owned all Gemini Materials and retained all associated intellectual property rights, which Gemini Society would need in order to license to future franchisees and other licensees. DPB agreed not to use Gemini's Materials except with DPB's permission.

31.     Gemini never assigned its intellectual property rights in Gemini's Materials to DPB or the joint venture.

32.     DPB never received an assignment of intellectual property rights from Gemini, in a written instrument or otherwise.

33. As the sole author of Gemini's Materials, Gemini Society owns all copyrights in all works that form part of Gemini's Materials. Gemini Society has also registered the copyrights in some of Gemini's Materials, including:

      A. Reg. No. VAu001446658 for the DPBakeshop Website, Mooncake splash page, Banh Mi splash page, King Cake (2018) splash page, and King Cake (2020) splash page; and

      B. Reg. Nos. VAu001435493 and VA0002258630 for King Cake Box designs.

34. Gemini Society acquired trademark rights in the DP Bakeshop Mark and the Dong Phuong Banh Mi & Baked Goods logo through its direct sales of branded merchandise to customers and through uses by its licensees, DPB and the Reseller Licensees.

35. To help offset the cost of Gemini Society's upfront investments, DPB promised to pay license fees based on what it could afford to pay plus a fee based on a percentage of DPB's sales.

36. These fees aligned the financial interests of Gemini Society and DPB. This meant that increasing DPB's revenue and total profits – thereby making DPB more attractive to potential franchisees and investors – increased Gemini Society's fees and licensing revenue.

37. From the beginning, the parties understood and expected that future franchisees would pay for access to and licenses for Gemini's Materials, which would allow the Gemini Society to recoup its investment and make a reasonable profit.

38. Each year, DPB and Gemini Society negotiated minimum fees that DPB would pay that year, which were memorialized in written Statements of Work. This "friends and family" pricing was unique to DPB, because Gemini would have charged arms-length customers multiple times the amount of fees it collected from DPB between 2017 and 2021 for the same work.

39.     Gemini Society did not charge DPB fees at arms-length prices, because the parties were operating as a joint venture. Gemini Society trusted DPB to be honest with Gemini Society about what it could afford to pay from year to year.

40.     Gemini's strategies worked. DPB's sales increased as Gemini expanded DPB's consumer base at retail, wholesale and online through new brand identity systems, e-commerce and marketing platforms.

41.     Whereas DPB previously sold virtually all its products through local retail and wholesale channels, Gemini's strategies helped DPB expand their sales to a nationwide audience through e-commerce and online marketing.

42.     For example, Gemini's e-shop platform allowed customers to place advanced pick-up and shipping orders for King Cakes before and throughout the King Cake season, generated custom reports detailing daily sales for pick-up and shipping, and blacked out dates when sales totals were reached.

43.     Gemini's Materials increased and enhanced DPB's customer engagement through brand experiences.

44.     Gemini created a branded e-shop and purchased inventories of branded merchandise that Gemini sold directly to customers.

45.     By 2019, DPB had more than doubled its revenues from 2016 levels and was now earning millions of dollars annually.

46.     In late 2019, Mr. Garza and Mr. Ramirez met at Gemini Society's offices in Austin, Texas. Mr. Garza had recently left DSGN Associates to start his own firm, and he was drafting architectural plans to expand DPB. Like old times, Mr. Garza and Mr. Ramirez discussed possibilities for the build-out and brand experiences.

47.     In addition to Gemini's and DPB's agreements and understandings reached orally and via email communications, written agreements included Statements of Work dated January 24, 2017, June 23, 2017, March 8, 2018, December 16, 2019, and January 29, 2021, the Change Order dated May 4, 2020, and the Reseller Program License Terms and Agreement. DPB also took responsibility for delays, rework and changes in direction and agreed to pay Gemini Society for losses caused by such delays, rework, and changes in direction.

48.     With DPB's knowledge and support, in 2020 Gemini established a reseller program for third parties to access and promote certain of Gemini's Materials under online terms (the "Reseller Program").

49.     DPB referred potential resellers to the Reseller Program, and DPB filled orders placed through the Reseller Program. Reseller Licensees received marketing materials, social media content, and brand identity systems to advertise that customers could buy DPB's King Cakes at their retail location, driving foot traffic and earning the Reseller Licensees additional sales.

50.     Gemini Society's Reseller Program for the 2021 King Cake season was wildly popular. Resellers who agreed to the Reseller Program included the following businesses:

A.     Adams Street Grocery & Deli;
B.     Amore Bakery and Café;
C.     Bao Asia Market;
D.     Bo Tea Café;
E.     Bourree;
F.     Caffe Latte Da;
G.     Coffee Bean;
H.     Flavors Snoballs;
I.     Jazzy Pete's;
J.     Jeanfreau's Supermarket;
K.     Killer Poboys;
L.     Mr. Bubbles Sandwich House;
M.     Nesbit's Markets;
N.     Pharmacy in Diamondhead;
O.     Pho Cong Noodle & Grill;
P.     Pho Grace;

Q.   Waveland Pharmacy;

R.   Worth Repeating;

S.   Zuppardo's Family Market (collectively, the "<u>Reseller Licensees</u>").

51.   DPB was aware of Gemini's Reseller Program License Terms and Agreement, which granted a limited license to certain Gemini Materials to the Reseller Licensees. To join the program, Reseller Licensees paid Gemini Society a license fee directly.

52.   When long-time customers of DPB asked how they could join the Reseller Program, Mrs. Garza directed them to Gemini Society and encouraged them to join. Mrs. Garza did not object to the Reseller Program or the fees charged to Reseller Licensees by Gemini Society.

53.   Reseller Licensees placed orders through the e-shop, for which Gemini Society earned an 8% fee.

54.   Eventually, some of DPB's wholesale customers wanted access to the Reseller Program, too. DPB asked Gemini Society to waive its fees and allow some of its wholesale customers to access and use the same marketing and other brand identity materials as paying Reseller Licensees. Honoring its commitment to existing Reseller Licensee, Gemini Society declined to make an exception for higher-volume wholesale customers, who placed orders at discounted prices directly with DPB, not the e-shop.

55.   Each year DPB agreed to pay the same or higher minimum annual license fees than the year before. Beginning in 2020, DPB agreed the license fees would include 8% of e-shop net sales. DPB also agreed this "Percentage of e-shop Net Sales [was] to remain in effect for subsequent calendar years until scope, fees, expenses, invoicing, and new terms are mutually agreed upon."

56.     At all times, Gemini Society treated DPB with due care and consideration one usually extends to friends and family. In 2020, when DPB claimed it could not afford to pay the full 8% fee, Gemini Society agreed to reduce the fee to 5% for the remainder of the year.

57.     In 2021, DPB recommitted to the same terms, including the 8% fee plus a $1 per box fee for custom boxes including for King Cakes, bahn mi boxes, mooncakes, and other baked goods boxes.

58.     Without Gemini Society's consent, DPB communicated with some Reseller Licensees about placing orders directly with DPB, bypassing the e-shop. This would cut out Gemini Society from its share of fees from orders placed by Reseller Licensees via the e-shop, as they were required to do under the Reseller Program.

59.     For the duration of the joint venture and subject to DPB's compliance with Gemini Society's quality standards and payment of all fees due to Gemini Society, Gemini Society granted a limited license for DPB to use Gemini's Materials, and DPB could not use Gemini's Materials except as permitted by Gemini.

60.     Over the course of the Partnership Venture, Gemini created millions of dollars of value, and DPB and Gemini agreed the venture would continue for several years beyond 2021, so that Gemini could recoup over time its costs plus a reasonable profit. This is one of the reasons why the 2020 and 2021 Statements of Work set minimum license fees for "subsequent calendar years."

61.     Gemini granted a limited license to Gemini's Materials to DPB in early 2017 and to Reseller Licensees beginning in November 2020, and such uses by DPB and Reseller Licensees inured to the benefit of Gemini.

62.     Without Gemini Society's knowledge or consent, on August 4, 2017, DPB registered with the Louisiana Secretary of State the DP Bakeshop and logo. The registration identifies "baked goods such as breads, cakes, pies, and sandwiches."

63.     This registration is invalid for several reasons. First, DPB does not own the DP Bakeshop logo, so DPB could not register it. Second, no product packaging bearing the DP Bakeshop logo had been ordered much less used in commerce as of August 4, 2017, so DPB's application was premature and void *ab initio*. Third, in its application, DPB made false statements to the Louisiana Secretary of State relating to its ownership, exclusive rights in, and use of the DP Bakeshop logo. Because DPB defrauded the Louisiana Secretary of State, the registration should be canceled.

64.     When Gemini Society confronted DPB about the Louisiana registration, DPB said the application and registration was an accident.

65.     In early 2021, Mrs. Garza told Gemini Society that she no longer wanted to be treated like a "charity case" and she asked for options for restructuring the parties' relationship.

66.     In response and at Mrs. Garza's request, Gemini Society shared its arms-length fee structure for the types of services it had rendered to DPB to date. Mrs. Garza was shocked by the fees that Gemini Society normally charged.

67.     Mrs. Garza candidly admitted that she had not discussed with her mother, Mrs. Tran, the fees DPB had been paying Gemini Society. Mrs. Garza had never told Mrs. Tran about the parties' joint venture and special relationship, and she said she could not tell her mother that DPB had paid Gemini Society for years and did not own anything.

68.     On April 12, 2021, Mrs. Garza notified Gemini Society that DPB was terminating its relationship with Gemini Society. She terminated because DPB wanted to cut out Gemini

Society and DPB did not want to pay the fees that the parties had agreed for 2021 and in future years.

69.     This terminated Gemini Society's licenses to DPB. Accordingly, the same day, Gemini Society demanded that DPB cease using the intellectual property of Gemini Society.

70.     In response, Mrs. Garza understood she needed to seek permission to continue to use Gemini's Materials, because DPB had previously licensed Gemini's Materials from Gemini Society for years and agreed not to use Gemini's Materials except as permitted by Gemini Society. Consistent with that understanding and seeking such permission, Mrs. Garza wrote:

A.     "I would like to negotiate a fee to allow us to use up these branded materials."

B.     "Below are the items I would like to negotiate a fee for use . . . ."

C.     "We will not reprint any of these. Our goal is to use up existing inventory."

D.     "I would also like to continue to use the 3 [branded] vans, mural and staff uniforms for 6 months. We will have these redesigned and replaced as soon as possible"

E.     "As for the remaining Banh Mi and King Cake boxes in inventory, I am hoping you will honor our previous agreement, since we have already purchased the license for these. Again, we would not be reprinting any, only using up existing stock."

71.     Gemini Society offered several pricing options for DPB to continue using Gemini's Materials as it transitioned to a new brand. But because DPB would no longer qualify for "friends and family" discount pricing, DPB rejected these offers and declined to pay Gemini Society its arms-length prices.

72.     Gemini Society de-branded the DPBakeshop website. DPB is usually closed on Tuesdays, so DPB removed Gemini's Materials from the website on a Monday night. By the time DPB opened the following Wednesday, DPB had another website ready for visitors.

73.     DPB breached fiduciary duties owed to Gemini in several ways.

74.     DPB violated its obligation to deal with Gemini in good faith. For example, even as Gemini's strategies generated millions of dollars of revenue for DPB, DPB lied to Gemini about how much in licensing fees it could afford to pay.

75.     DPB failed to take due care in its relationship with Gemini Society. Among other things, this caused delays, rework and changes in direction that injured Gemini Society and contributed to Gemini Society's losses.

76.     DPB has also been disloyal. DPB interfered with Gemini Society's relationship with the Reseller Licensees. DPB diverted sales that, but for DPB's disloyal actions, should have and would have been placed with the e-shop and diverted them to retail and wholesale channels. This was done by DPB in an attempt to avoid licensing fees DPB owed to Gemini and to cut Gemini Society out of the business that DPB agreed to conduct with Gemini.

77.     For example, DPB cut out Gemini Society by terminating its relationship with respect to the e-shop, discontinuing the Reseller Program, and using the strategies and other confidential business information that Gemini Society created and other Gemini Materials for its own benefit without paying Gemini Society.

78.     DPB also breached its fiduciary duties by allowing unauthorized third parties to use Gemini's Materials without permission from Gemini Society and in a manner that was inconsistent with Gemini Society's high quality standards. Now DPB contends that it owns all rights in Gemini's Materials.

79.     DPB has also failed to honor its promise to pay for Gemini Society's losses from delays, rework, and changes in direction caused by DPB. Examples of uncompensated work performed by Gemini Society and losses suffered by Gemini Society due to delays, rework, and changes in direction by DPB include:

A.     Vietnamese Po'boy e-shop - Shopify (March 2019-May 2020), including research, business philosophy & strategy, identity, setup, product rollout, configuration, design, copy, development, and offline/online marketing of Vietnamese Po'boy e-shop.

B.     Vietnamese Po'boy Box Round 1 (March 2019-March 2020), including research, business philosophy & strategy, identity, box dimensions & structure, design, illustration, naming, offline/online marketing, color proofing, printer communication for Vietnamese Po'boy Box.

C.     Banh Mi & Baked Goods e-shop - Square (May 2020-April 2021), including research, business philosophy & strategy, identity, product rollout strategy, setup, configuration, design, copy, development, monitoring, maintenance, offline/online marketing, and updates for Banh Mi & Baked Goods e-shop.

D.     Banh Mi Box Round 2 (March 2020-July 2020), including research, business philosophy & strategy, identity, box dimensions & structure, design, illustration, naming, offline/online marketing, color proofing, printer communication and acquisition for Banh Mi Box.

E.     Reseller e-shop (October 2020-February 2021), including research, business philosophy & strategy, identity, setup, configuration, copy, development, monitoring, offline/online marketing, maintenance and updates for King Cake Reseller e-shop.

F.     Reseller Updates and Changes over holiday (December 2020-January 2021), including updated Reseller Licensee data on a weekly basis and developed a custom reporting tool used for production.

80.     Mrs. Tran, who lives near the restaurant and bakery, is directly involved in the supervision of DPB employees. She approves large purchases, including product packaging and boxes used for DPB's products.

81.     As president of DPB, Mrs. Garza manages all contracts and is directly involved in placing orders for product packaging and boxes used for DPB's products.

82.     Mrs. Tran and Mrs. Garza have knowledge and control over the branded products advertised and sold to DPB's customers, and they are the moving force behind DPB's business decisions, including the decision to continue to use Gemini's Materials after its license was terminated.

83.     After DPB's license was terminated, and in breach of its agreements with Gemini Society, DPB continued to use the DP Bakeshop Mark on its product packaging, including bread bags:



84.     As of October 13, 2021, DPB continued to use the DP Bakeshop Mark in its retail store, including on items worn by employees:



85.     The King Cake Box Designs created by Gemini Society also include the DP Bakeshop Mark. DPB has threatened to use King Cake Boxes bearing the DP Bakeshop Mark for the 2022 King Cake Season.

86.     After DPB's license was terminated, and in breach of its agreements with Gemini Society, it continued to use the Dong Phuong Bahn Mi and Baked Goods Logo on its product packaging, including for its bahn mi:



87.     As of October 13, 2021, DPB continued to use Dong Phuong Bahn Mi and Baked

Goods Logo on bags given to customers at its retail store:



88.     Mrs. Garza and DPB have defamed Gemini Society, and Mrs. Garza and Mrs. Tran

have conspired to destroy Gemini Society's good reputation. Mrs. Garza communicated

defamatory statements to the media, existing Reseller Licensees, prospective business relations of

Gemini Society, and other third parties.

89.     Mrs. Garza said Gemini Society demanded increases to its percentage of e-shop

sales, which is a lie because the 8% rate agreed in 2021 was the same 8% rate the parties agreed

to in 2020.

90.     Mrs. Garza said Gemini Society demanded high license fees, which was a lie.

91.     Mrs. Garza said Gemini Society treated DPB unfairly, which was a lie.

92.     Mrs. Garza said there were no formal contracts between DPB and Gemini Society,

which was a lie.

93.     Mrs. Garza told the media that DPB 100,000 king cakes during the 2021 King Cake season, which is either a lie or evidence that DPB failed to pay all $1/box fees owed under the 2021 Statement of Work.

94.     Mrs. Garza's statements to the media and Gemini Society's prospective business relationships have caused Gemini Society to lose hundreds of thousands of dollars in business opportunities in the New Orleans market alone. Her statements have also damages Gemini Society's ability to find work outside of New Orleans.

95.     The harm caused by Mrs. Garza's statements have also harmed Gemini Society's good reputation and ability to earn new work.

96.     Mrs. Garza and Mrs. Tran have used DPB to engage in unlawful acts. DPB has failed to maintain complete records of the amount its workers work or how much they are paid. DPB has violated labor laws and wage and hour laws.

97.     Recently the Department of Labor ordered DPB to pay nearly $130,000 in overtime back pay to employees.

98.     Even after the order from the Department of Labor, DPB has hired foreign workers and paid them cash in an effort to avoid labor and immigration laws and to skirt employment taxes.

99.     DPB is kept thinly capitalized, with cash earned by DPB paid primarily to Mrs. Garza and Mrs. Tran, who have used the money to buy new houses, cars, and other expensive purchases in recent years.

100.    Mrs. Garza and Mrs. Tran do not follow corporate formalities in their management of DPB.

## CLAIMS AND CAUSES OF ACTION

### COUNT I. Declaratory Judgment that Gemini Society's Licenses to
### DPB Were Terminated
### (Under Rule 57 and Texas law and Against DPB)

101.    The foregoing paragraphs are incorporated by reference.

102.    This claim is brought under the Texas Uniform Declaratory Judgments Act. Tex.

Civ. Prac. & Rem. Code §§ 37.001, *et seq*.

103.    Gemini Society's licenses to DPB were terminated, which at least DPB disputes.

104.    Gemini Society is entitled to a declaratory judgment that Gemini Society's licenses

to DPB were terminated.

### COUNT II. Declaratory Judgment that Gemini Society Owns
### Copyrights In The Works It Authored
### (Under Rule 57 and Texas law and Against DPB)

105.    The foregoing paragraphs are incorporated by reference.

106.    This claim is brought under the Texas Uniform Declaratory Judgments Act. Tex.

Civ. Prac. & Rem. Code §§ 37.001, *et seq*.

107.    Gemini Society owns the copyrights in the works it authored, including Gemini's

Materials, which DPB disputes.

108.    Gemini Society is entitled to a declaratory judgment that Gemini Society owns the

copyrights in the works it authored, including Gemini's Materials.

### COUNT III. Declaratory Judgment that Gemini Society Owns DP Bakeshop Mark
### (Under Rule 57 and Texas law and Against DPB)

109.    The foregoing paragraphs are incorporated by reference.

110.    This claim is brought under the Texas Uniform Declaratory Judgments Act. Tex.

Civ. Prac. & Rem. Code §§ 37.001, *et seq*.

111.    Gemini Society owns the DP Bakeshop Mark, which DPB disputes.

112.     Gemini Society is entitled to a declaratory judgment that Gemini Society owns the DP Bakeshop Mark.

## COUNT IV. Trademark Infringement and Unfair Competition
### (Under Lanham Act Section 43(a) and the laws of Texas and Louisiana and Against DPB, Mrs. Garza, and Mrs. Tran)

113.     The foregoing paragraphs are incorporated by reference.

114.     The foregoing allegations are sufficient to plead a claim for trademark infringement and unfair competition. DPB's unauthorized uses of the DP Bakeshop Mark infringed Gemini Society's exclusive right to use the mark.  DPB used in commerce DP Bakeshop Mark, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of DPB with Gemini Society, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities. Such uses damaged Gemini Society in an amount to be proven at trial.

## COUNT V. Defamation
### (Under Texas law and Against DPB, Mrs. Garza and Mrs. Tran)

115.     The foregoing paragraphs are incorporated by reference.

116.     The foregoing allegations are sufficient to plead a claim for defamation, which is a compulsory counterclaim. As alleged herein, on behalf of DPB and for herself, Mrs. Garza made false and defamatory statements concerning Gemini Society to third parties, including parties with whom Gemini Society had current contracts and prospective business relationships, causing damages to Gemini Society to be proven at trial.

117.     Gemini and its principals are not public figures and Gemini's dispute with DPB is not a public issue or matter of public concern, because it is not a matter of political, social, or other concern to the community.

118.    Mrs. Garza's statements were made with the knowledge, consent, and agreement of Mrs. Tran, who conspired with Mrs. Garza to defame Gemini Society and is therefore jointly and severally liable for the damages caused by such defamation.

**COUNT VI. Defamation**
**(Under Louisiana law and Against DPB, Mrs. Garza, and Mrs. Tran)**

119.    The foregoing paragraphs are incorporated by reference.

120.    The foregoing allegations are sufficient to plead a claim for defamation, which is a compulsory counterclaim. As alleged herein, on behalf of DPB and for herself, Mrs. Garza made false and defamatory statements concerning Gemini Society to third parties, including parties with whom Gemini Society had current contracts and prospective business relationships, causing damages to Gemini Society to be proven at trial.

121.    Mrs. Garza's statements were made with the knowledge, consent, and agreement of Mrs. Tran, who conspired with Mrs. Garza to defame Gemini Society and is therefore answerable, in solido, for the damages caused by such defamation.

**COUNT VII. Breach of Fiduciary Duty**
**(Under Texas law and Against DPB)**

122.    The foregoing paragraphs are incorporated by reference.

123.    The foregoing allegations are sufficient to plead a claim for breach of fiduciary duty. As a joint venture partner, DPB owed Gemini Society fiduciary duties that it breached by engaging in the activities alleged herein, which damaged Gemini Society in an amount to be proven at trial. Their community of interest included the e-shop, Reseller Program, and future opportunities to market boxed products and franchises. In essence, Gemini Society agreed to create a franchise-capable platform, which Gemini Society would license to DPB, and DPB agreed to license Gemini's Materials and pay Gemini Society fees, including a percentage of its sales. On the basis of the decades' long relationship between the Garzas and Ramirezes, this established a

special relationship of confidence and trust between the parties to act primarily for the other's benefit.

## COUNT VIII. Breach of Fiduciary Duty
### (Under Louisiana law and Against DPB)

124.    The foregoing paragraphs are incorporated by reference.

125.    This claim for breach of fiduciary duty under Louisiana law is made in the alternative to the foregoing count for breach of fiduciary duty under Texas law.

126.    The foregoing allegations are sufficient to plead a claim for breach of fiduciary duty. As a joint venture partner, DPB owed Gemini Society fiduciary duties that it breached by engaging in the activities alleged herein, which damaged Gemini Society in an amount to be proven at trial. Their community of interest included the e-shop, Reseller Program, and future opportunities to market boxed products and franchises. In essence, Gemini Society agreed to create a franchise-capable platform, which Gemini Society would license to DPB, and DPB agreed to license Gemini's Materials and pay Gemini Society fees, including a percentage of its sales. On the basis of the decades' long relationship between the Garzas and Ramirezes, this established a special relationship of confidence and trust between the parties to act primarily for the other's benefit.

## COUNT IX. Piercing Corporate Veil
### (Under Louisiana law and Against DPB and Mrs. Tran)

127.    The foregoing paragraphs are incorporated by reference.

128.    The foregoing allegations are sufficient to plead a claim for piercing the corporate veil of DPB. Mrs. Tran owns DPB and uses the corporation as her private bank. At her deposition, she was unable to say how much money she is paid annually or answer many other questions to which an officer, director, and sole shareholder of a corporation should know the answer. On information and belief, she uses corporate accounts and funds for personal expenses. DPB does

not follow formalities for transacting corporate affairs, and it fails to hold regular shareholder meetings, board meetings, or maintain written minutes for such meetings. DPB is kept thinly capitalized, with cash earned by DPB paid primarily to Mrs. Garza and Mrs. Tran, who have used the money to buy new houses, cars, and other expensive purchases in recent years. DPB has violated labor laws and engaged in other unlawful acts alleged herein justifying piercing its corporate veil and holding its shareholders liable for its debts.

### COUNT X. Tortious Interference With Contracts
### (Under Texas law and Against DPB and Mrs. Garza)

129.    The foregoing paragraphs are incorporated by reference.

130.    The foregoing allegations are sufficient to plead a claim for tortious interference with contracts. As further alleged herein, Gemini Society had existing contracts with third parties, including vendors and Reseller Licensees, DPB acted willfully and intentionally to interfere with such contracts, causing damages to Gemini Society in an amount to be proven at trial.

### COUNT XI. Interference With Prospective Business Relationships
### (Under Texas law and Against DPB and Mrs. Garza)

131.    The foregoing paragraphs are incorporated by reference.

132.    The foregoing allegations are sufficient to plead a claim for interference with prospective business relationships. Through its statements in public and private, including to Gemini Society's prospective business relationships, DPB has interfered with Gemini Society's prospective business relationships by inducing third parties not to enter into or continue the prospective relation with Gemini Social and preventing Gemini Society from acquiring prospective business relationships. Such acts by DPB have harmed Gemini Society and prevented it from consummating new business contracts.

133.    These defamatory and unlawful actions were undertaken by DPB without justification with intent to harm Gemini Society, which has suffered damages in an amount to be proven at trial.

### COUNT XII. Interference With Prospective Business Relationships
### (Under Louisiana law and Against DPB and Mrs. Garza)

134.    The foregoing paragraphs are incorporated by reference.

135.    This claim for interference with prospective business relationships under Louisiana law is made in the alternative to the foregoing count for interference with prospective business relationships under Texas law.

136.    The foregoing allegations are sufficient to plead a claim for interference with prospective business relationships. Through its statements in public and private, including to Gemini Society's prospective business relationships, DPB has interfered with Gemini Society's prospective business relationships by inducing third parties not to enter into or continue the prospective relation with Gemini Social and preventing Gemini Society from acquiring prospective business relationships. Such acts by DPB have harmed Gemini Society and prevented it from consummating new business contracts.

137.    Without any justification, DPB acted with actual malice, ill will, and bad feelings against Gemini Society, which has suffered damages in an amount to be proven at trial.

### COUNT XIII. Violations of LUTPA
### (Under Louisiana law and Against DPB and Mrs. Garza)

138.    The foregoing paragraphs are incorporated by reference.

139.    The foregoing allegations are sufficient to plead a claim of violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (commonly known as "LUTPA").

### COUNT XIV. Cancelation of DPB's Louisiana Registration for DP Bakeshop
### (Under Louisiana law and Against DPB)

140.     The foregoing paragraphs are incorporated by reference.

141.     Under La. R.S. § 51:219, the Louisiana Secretary of State "shall cancel from the register: . . . (4) Any registration concerning which a court of competent jurisdiction shall find: . . . (b) That the registrant is not the owner of the mark"; "(c) That the registration was granted improperly"; or "(d) That the registration was obtained fraudulently." As alleged herein, when DPB applied to register the DP Bakeshop logo with the Louisiana Secretary of State on August 4, 2017, it was not the owner of the DP Bakeshop logo and it had not used it in commerce. Hence, the application was premature and the registration was granted improperly. DPB also made false statements to the Louisiana Secretary of State relating to its ownership, exclusive rights in, and use of the DP Bakeshop logo, and, therefore, the registration was obtained fraudulently. It should be canceled.

142.     In the alternative, under La. R.S. § 51:1408, for violations of LUTPA, the court has authority to order the "revocation, forfeiture, or suspension of any license, charter, franchise, certificate, or other evidence of authority of any person to do business in the state." If the court rules in favor of Gemini Society on its LUTPA claims, the court may revoke the registration or cause DPB to forfeit it.

**COUNT XV. Misappropriation of Trade Secrets**
**(Under DTSA and the laws of Texas and Louisiana and Against DPB and Mrs. Garza)**

143.     The foregoing paragraphs are incorporated by reference.

144.     The foregoing allegations are sufficient to plead a claim of misappropriation of trade secrets. At great expense and as further alleged herein, Gemini Society developed plans, methods, go-to market strategies, and other proprietary and confidential business information, which were the subject of reasonable measures by Gemini Society to maintain the confidentiality and secrecy of such information. DBP's use of such trade secrets was subject to its license

agreement with Gemini Society, under which DBP agreed, expressly and under the circumstances, that it would not to use such trade secrets and other Gemini's Materials except as permitted by Gemini Society. Such trade secrets derive independent economic value from not being generally known and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

145.   DPB's misappropriation of Geminis Society's trade secrets was willful and malicious.

### COUNT XVI. Breach of Contract
### (Under Texas law and Against DPB)

146.   The foregoing paragraphs are incorporated by reference.

147.   The foregoing allegations are sufficient to plead breach of contract claims. Gemini Society and DPB agreed to valid contracts alleged herein, under which Gemini Society performed or tendered performance, and DPB breached the contract, causing damages to Gemini Society in an amount to be proven at trial.

### COUNT XVII. Promissory Estoppel
### (Under Texas law and Against DPB)

148.   The foregoing paragraphs are incorporated by reference.

149.   The foregoing allegations are sufficient to plead a claim of promissory estoppel. DPB knew or should have known that the promises alleged herein would lead Gemini Society to reasonably and substantially reply on such promises, such reliance was foreseeable by DPB, and Gemini Society relied on such promises to its detriment.

### COUNT XIII. Detrimental Reliance
### (Under Louisiana law and Against DPB)

150.   The foregoing paragraphs are incorporated by reference.

151.    The foregoing allegations are sufficient to plead a claim for detrimental reliance. DPB knew or should have known that the promises alleged herein would induce Gemini Society to rely on it to the detriment of Gemini Society and Gemini Society was reasonable in so relying on such promises.

### COUNT XIX. Unjust Enrichment
### (Under the laws of Texas and Louisiana and Against DPB)

152.    The foregoing paragraphs are incorporated by reference.

153.    This claim for unjust enrichment is made in the alternative to the foregoing counts.

154.    The foregoing allegations are sufficient to plead a claim of unjust enrichment. DPB has been enriched without cause at Gemini Society's expense and, therefore, DPB is bound to compensate Gemini Society in an amount to be proved at trial.

### <u>JURY TRIAL</u>

155.    Gemini Society reserves the right to a trial by jury on all matters triable by a jury.

**REQUESTS FOR RELIEF**

Gemini Society respectfully requests an order in favor of Gemini Society and against DPB and the other Counterclaim Defendants, including a judgment that:

A.      denies DPB's claims against Gemini Society, dismisses them with prejudice, and awards DPB its attorney's fees, costs, and expenses for defending those claims;

B.      sustains Gemini Society's claims against the Counterclaim Defendants;

C.      finds DPB breached its contractual obligations, fiduciary duties, and other quasi-contractual obligations owed to Gemini Society and awards Gemini Society all its damages, including damages to compensate Gemini Society for the expenditures it made in preparation for the performance of its obligations, the benefits that Gemini Society would have received had DPB performed, rather than breached, its obligations, and Gemini Society's other losses, lost profits, and actual damages;

D.      finds DPB and Linh Garza defamed Gemini Society, tortuously interfered with Gemini Society's contracts and prospective business relationships, misappropriated Gemini Society's trade secrets, engaged in unfair and deceptive trade practices, and other delictual acts;

E.      holds the shareholders of DPB liable for the debts of DPB;

F.      declares that the licenses granted by Gemini Society to DPB were terminated;

G.      declares that Gemini Society owns the copyrights in the Gemini Materials and other works authored by Gemini Society;

H.      declares that Gemini Society, not DPB, owns the DP Bakeshop Mark;

I.      finds that DPB fraudulently obtained Louisiana Registration for DP Bakeshop logo, Reg. No. 68-6857;

J.      revokes and cancels the Louisiana Registration for DP Bakeshop, Reg. No. 68-6857 and enters an order requiring the Louisiana Secretary of State to cancel from its register such registration;

K.      finds DPB, Linh Garza, and Huong Tran infringed the DP Bakeshop Mark;

L.      issues a preliminary and permanent injunction enjoining DPB, Linh Garza, and/or Huong Tran, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing from:

    i.      infringing the DP Bakeshop Mark or using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of DPB with Gemini Society, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities;

    ii.     misappropriating Gemini Society's trade secrets and/or engaging in unfair and deceptive trade practices by using without authorization the plans, methods, go-to market strategies, and other proprietary and confidential business information created by Gemini Society; and

    iii.    defaming Gemini Society, including in private communications, and interfere with existing contracts and prospective business relationships of Gemini Society.

M.      finds this case exceptional;

N.      finds that the actions of DPB and the other Counterclaim Defendants as alleged herein were unlawful, willful and malicious, and they acted with actual malice;

O.      awards Gemini Society all damages, exemplary damages, enhanced damages, treble damages, punitive damages, and other legal relief against the Counterclaim Defendants' for their unlawful acts;

P.      in the alternative under Gemini Society's unjust enrichment claim, awards Gemini Society just compensation due;

Q.      awards Gemini Society prejudgment and post-judgment interest;

R.      awards Gemini Society all its attorney's fees, costs, and expenses in prosecuting its claims and affirmative defenses; and

S.      awards Gemini Society such other and further relief as the Court may deem appropriate, just and proper.


Respectfully submitted,

**JONES WALKER LLP**
*/s/ Micah Fincher*
**Micah J. Fincher, T.A. (LA 33830)**
**Joseph F. Lavigne (LA 28119)**
**Andrew C. Rayford (La. Bar No. 39443)**
201 St. Charles Ave., Ste. 5100
New Orleans, LA 70170-5100
T. 504.582.8000
F. 504.589.8464
mfincher@joneswalker.com
jlavigne@joneswalker.com
arayford@joneswalker.com
***Counsel for Defendant***