UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONG PHUONG BAKERY, INC.                    CIVIL ACTION

VERSUS                                       NO. 21-1109

THE GEMINI SOCIETY, LLC                      SECTION: "J"(2)

## ORDER & REASONS

Before the Court is a *Rule 12(b) Motion for Partial Dismissal and Rule 12(f) Motion to Strike First Amended Counterclaim* **(Rec. Doc. 79)** filed by Plaintiff, Dong Phuong Bakery, Inc. ("Plaintiff"). The motion is opposed by The Gemini Society, LLC ("Defendant") (Rec. Doc. 84). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion is **GRANTED in part** and **DENIED in part.**

## FACTS AND PROCEDURAL BACKGROUND[1]

This action arises from a dispute involving Defendants' branding and marketing work for Plaintiff's bakery.

Plaintiff and Defendant were long term friends of twenty years. In 2017, Plaintiff retained Defendant to create a new website, king cake box design, and other marketing material pursuant to the 2017 Statement of Work. In particular, Defendant was hired to create a new design logo (the "DP Bakeshop Mark") and licensed Plaintiff to use the mark. Each subsequent year, including 2021, Plaintiff

---

[1] Information is taken from the Amended Complaint **(Rec. Doc. 63)**.

retained Defendant via new statements of work for various branding and marketing services.

In 2020, Defendant asked Plaintiff to commission Defendant to build a Reseller E-Shop, pay Defendant a percentage of gross revenues, and charge its resellers a "license fee." Tensions arose as a result of these asks.

On April 12, 2021, Linh Garza, President of Dong Phuong Bakery, notified Defendant that they were terminating their relationship due to Defendant's insistence that Plaintiff charge its resellers a licensing fee. In response, Defendant demanded Plaintiff cease use of all branding, marketing, and packaging items. Further, Defendant asserted that there was an outstanding invoice of $268,151.31 and that they exclusively owned all brand logomarks and logoscripts, brand and product naming, packing and brand colors, brand copy and positioning, brand artwork and characters. This same day, Defendant also disabled Plaintiff's website, eliminating Plaintiff's online sale abilities.

Plaintiff claims that, as a result of Defendant's actions, Plaintiff has been stripped of its website and branding materials, lost revenue and market share without a website during the pandemic, lost time, and incurred expenses including attorney fees and professional design costs.

On May 8, 2021, Plaintiff filed suit against Defendant. Since the beginning of the suit, there have been numerous motions to dismiss (Rec. Docs. 14, 26, 33, 54, 88) and several amended complaints and answers (Rec. Docs. 1, 20, 46, 63, 69, 71).

In the present motion (Rec. Doc. 79), Plaintiff moves to dismiss the following counterclaims found in the First Amended Counterclaim (Rec. Doc. 69): declaratory judgment (Counts I, II, and III); trademark infringement (Count IV); defamation (Counts V and VI) breach of fiduciary duty (Counts VII and VIII); piercing the corporate veil (Count XI); tortious interference with prospective business relationships (Counts XI and XIII); misappropriation of trade secrets (Counts XV); breach of contract (Count XVI); and unjust enrichment (Count XIX). Plaintiff also moves to strike allegations in paragraphs 158-163.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading

as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## <u>DISCUSSION</u>

### A.    **Declaratory Judgments (Counts I, II, and III)**

In Counts I, II, and III, Defendant seeks declaratory judgments under the Texas Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil Procedure. Defendant acknowledges that the Texas Declaratory Act "is a procedural, and not a substantive, provision and therefore does not apply to actions in federal court." Tex. Civ. Prac. & Rem. Code 37.00, *et seq*; *see also Vera v. Bank of Am. N.A.*, 569 Fed. App'x 349, 352 (5th Cir. 2014). To the extent that Counts I, II, and III seek judgment under the Texas Declaratory Judgment Act, those claims shall be dismissed.

### B.    **Declaratory Judgment that Defendant Owns DP Bakeshop Mark and Trademark Infringement and Unfair Competition (Counts III and IV)**

In Count III, Defendant seeks a declaration that it owns the DP Bakeshop Mark. In Count IV, Defendant seeks a declaration that Plaintiff's continued use of the DP Bakeshop Mark infringes upon Defendant's exclusive right to use the mark. Plaintiff moves to dismiss these counts on the grounds that Plaintiff exclusively used the DP Bakeshop Mark in commerce and so, owns the mark. Defendant counters that Plaintiff was merely a licensee, which estops Plaintiff from claiming ownership.

The Fifth Circuit has held that when a licensee uses a licensed mark, they do not acquire ownership, but rather, use of the mark inures the benefit to the licensor. *Turner v. HMH Pub. Co.*, 380 F.2d 224, 229 (5th Cir. 1967) ("a trade or service mark may be acquired through its use by controlled licensees, even though the registrant

4

itself may not have used the mark."); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, 784 Fed. App'x 118, 128 (4th Cir. 2019) (citing 15 U.S.C.S. § 1055) ("It is black letter law that a licensee's use of a mark inures to the benefit of the licensor, and the licensee does not acquire its own ownership rights.").

Here, Defendant licensed the DP Bakeshop Mark for use by Plaintiff. Thus, Defendant, the licensor, likely benefited from any use by Plaintiff, the licensee. Defendant's pleading plausibly shows that Defendant owns the DP Bakeshop Mark, and so, the Court declines to dismiss Counts III and IV.[2]

---

[2] Although the Court declines to dismiss Counts III and IV, the Court does not find Defendant was owner of the Mark at this stage. More facts are needed to determine what rights Defendant has in the mark. Licensors have an affirmative duty to ensure the quality of their goods. *E.g.*, *McCarthy on Trademarks and Unfair Competition*, § 18:42 (Fifth Edition). A "naked licensor" can lose of some or all of their rights if the licensor fails to exercise such control and supervision over the licensee's use for a significant period of time. *See id.*; *Groucho's Franchise Sys. v. Gelco of Ga*, 2016 U.S. Dist. LEXIS 195927, at *12 (N.D. Ga. Aug. 24, 2016) (quoting *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973)).

The Fifth Circuit has few cases on trademark licensing, none of which are recent, and none discuss naked licensing. The Ninth Circuit issued a recent opinion that the Fifth Circuit is yet to address, which explains when a licensor may lose their rights:

> By not enforcing the terms of the trademark's use, the licensor may forfeit his rights to enforce the exclusive nature of the trademark. The key question is therefore whether [plaintiff] produced any evidence to raise a material fact issue as to whether it: (1) retained contractual rights to control the quality of the use of its trademark; (2) actually controlled the quality of the trademark's use; or (3) reasonably relied on FS to maintain the quality.

*FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 520, fn. 1 (Nov. 24, 2010); *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 909 (8th Cir. 2020); *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 Fed. App'x 118, 127-28 (4th Cir. 2019); *Can't Stop Prods. V. Sixuvus, Ltd.*, 295 F.Supp. 3d 381, 395 (S.D.N.Y. 2018); *Headspace In't LLC v. Podworks Corp.*, 428 P.3d 1260, 1265 (Wash. Ct. App. 2018). 'The absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of naked licensing." *Id.* at 516. Here, there is a question of whether Defendant retained contractual rights to or exercised control over the quality of use, which may impact what rights Defendant has in the Mark.

## C.    Defamation (Counts V and VI)

Plaintiff moves to dismiss Defendant's defamation claims, arguing that Defendant's pleading is factually insufficient. Defendant alleges that "Mrs. Garza communicated defamatory statements to the media, existing Licensed Resellers, prospective business relations of Defendant, and other third parties" including the following:

1) "Gemini Society demanded increases to its percentage of e-shop sales";
2) "Gemini Society demanded high license fees";
3) "Gemini Society abused its friendship with Dong Phuong";
4) "there were no formal contracts between Dong Phuong and Gemini Society";
5) "Gemini Society's conduct was offensive."

(Rec. Docs. 69, at 34-35; 84, at 17-18).

"Courts require a 'more particular pleading' for defamation claims to allow the opposing party to raise the appropriate defenses." *E.g., Sacchetti v. Optiv Sec., Inc.*, 2019 U.S. Dist. LEXIS 168604, at *20 (E.D. Tex. July 8, 2019) (quoting *Moyer v. Jos. A. Bank Clothiers, Inc.*, 2013 U.S. Dist. LEXIS 116762, at *6 (N.D. Tex. Aug. 19, 2013)). Defamation plaintiffs must identify the time and place of the statements and also, identify the third party to whom the statement was published. *Probasco v. Wal-Mart Stores Tex., LLC*, 766 Fed. App'x 34, 37 (5th Cir. 2019); *Lefkowitz v. Adm'rs of the Tulane Educ. Fund*, 2022 U.S. Dist. LEXIS, at *25-26 (E.D. La. Feb. 7, 2022). Moreover, only statements, not opinions, can be defamatory. *E.g., Sacchetti.*, 2019 U.S. Dist. LEXIS 168604 at *20.

Here, Defendant fails to plead defamation with particularity. Defendant does not identify the time and place that Mrs. Garza published these assertions, nor the

third parties to whom Mrs. Garza told. Moreover, allegations two through five appear to be opinions, not statements, which cannot be defamatory. As a result, Defendant's counterclaims for defamation must be dismissed.

### D.      Breach of Fiduciary Duty (Counts VII and VIII)

Counts VII and VIII claim Plaintiff breached its fiduciary duty under Texas and Louisiana law respectively. Defendant alleges that a fiduciary duty arose out of a joint venture and a long-term friendship. Plaintiff moves to dismiss these claims on the basis that no joint venture existed and thus, no fiduciary duty owed.

Courts are hesitant to recognize fiduciary duties, because of the extraordinary duties they entail, namely the requirement to put the other's interest ahead of their own. *ARA Auto. Group v. Central Garage*, 124 F.3d 720, 724 (5th Cir. 1997). "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). A joint venture gives rise to a fiduciary relationship and "has four elements: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise." *Metroplexcore, LLC v. Parsons Transp., Inc.*, 743 F.3d 964, 972 (5th Cir. 2014) (quoting *Smith v. Deneve*, 385 S.W.3d 904, 913 (Tex. App. 2009)).[3] In a joint venture, a community of interest is "a commonly shared incentive

---

[3] Although the requirements for a joint venture are articulated differently, they are in essence the same under Louisiana and Texas law. Under Louisiana law, "[a] joint venture results from two or

between parties as to the progress and goals.'" *Id.* at 973 (quoting *Hasslocher v. Heger*, 670 S.W.2d 689, 693 (Tex. App. 1984)). Although a manger may share common incentives, a management role does not rise to the level of mutual or coequal control in a business. *Id.* at 974 (citing *Smith*, 385 S.W.3d at 914 (explaining that control over a small part is not sufficient, there must be evidence that the partner has control over the business "i.e., the ownership and hypothetical future sale")).

In *ARA Auto. Group v. Central Garage*, Plaintiff's and Defendant's families were good friends of over forty years. 124 F.3d at 724. Plaintiff was an auto part manufacturer who entered a number of distributorship and marketing agreements with Defendant, a repair shop owner. *Id.* at 722. Each year, parties renegotiated the agreements to "cover prices, credit, and other terms for the coming year." *Id.* Additionally, Central Garage provided engineering services for certain ARA products in return for royalties on every product sold by ARA. *Id.* at 724. Central Garage's work directly assisted ARA's expansion into new markets, and in return, ARA agreed to subsidize Central Garage's creation of new stores. *Id.* Through the contracts and friendship, Central Garage was privy to confidential ARA information such as strategy, products, and pricing. *Id.* Central Garage even helped set the pricing of products to distributors, advised ARA on its choice of suppliers, and testified that they worked on engineering projects together like "brothers." *Id.* After a particularly

---

more persons undertaking to combine their efforts, knowledge, property or labor to engage in [and] carry [out] a single business venture for joint profit, where profits and losses are shared, with each party having some right of control over the business . . . The essential elements of a joint venture are generally the same as those of partnership, and accordingly, joint ventures are governed by the law of partnership." *White Haul Transp., Inc. v. Coastal Bridge Co., LLC*, 2008 U.S. Dist. LEXIS 43320, at *6, *10 (E.D. La. June 2, 2008).

tense negotiation, parties terminated their relationship. *Id.* at 722. Plaintiff filed an action for payment of an outstanding balance and breach of fiduciary duty upon termination of their relationship. *Id.*

Despite "extensive evidence of cooperation and friendship," the Court held there was no fiduciary relationship, because "these two sophisticated businesses entered into a number of contracts for mutual benefit, but the evidence [did] not demonstrate that either party agreed to put the other's interests ahead of its own." *Id.* at 725-27. Although they may have worked together on certain projects, they always worked predominantly in their own self-interest, and Central Garage had no area of exclusive control. *Id.* at 727. Further, the Court did not find that the royalties defendant received for each product sold rose to the level of sharing profits or losses. *Id.* at 724, 727.

Like the Plaintiff in *ARA Auto. Group*, Defendant here relies on parties' twenty-year friendship and statements of work to argue that they have a fiduciary relationship arising out of a joint venture. For a number of reasons, these facts do not give rise to a joint venture nor fiduciary relationship.

First, Plaintiff and Defendant are sophisticated businesses, who contracted for branding and marketing services. Through their contracts, parties reaped a mutual benefit, but neither party ever put the other's interests ahead of its own. Defendant's work building the e-shop, designing the logos, and establishing a brand helped Plaintiff expand their business. However, Plaintiff's interest remained the expansion of their baked goods sales, and separately, Defendant's interest remained in renewing

9

contracts with Plaintiff for continued work and revenue. Although both parties incurred benefits from Plaintiff's sales, the facts show that neither party's interests were ever secondary to the other party's interests.

Second, Defendant did not share in Plaintiff's profits or losses. Rather, successes and losses in sales fell squarely upon Plaintiff's shoulders. Defendant was paid flat fees for their work, aside from the 8% of gross e-shop sales. Much like the royalties Central Garage received for ARA's sales, this does not rise to the level of profit sharing. As for losses, there is no indication in any statement of work that Defendant would be impacted by Plaintiff's losses.

Third, Defendant had no area of exclusive control nor coequal, mutual control over Plaintiff's business. Plaintiff alone made the high-level decisions for Plaintiff, set the prices, made the goods, sold the goods, and was paid directly from the brick-and-mortar shop, the e-shop, and the Reseller Program. Defendant was separately paid by Plaintiff for their contracted branding and marketing services. At most, Defendant managed aspects of the e-shop, but a management role does not equate to a partner in a joint venture.

As a final note, Defendant argues that Plaintiff admits there was a fiduciary duty in Count X of its Second Amended Complaint. However, Count X clearly states that Plaintiff does not admit existence of a fiduciary duty. Rather, Plaintiff articulates that in the alternative, if the Court finds that a fiduciary duty does exist then Plaintiff would bring a claim for breach of fiduciary duty.

Therefore, the Court finds that the parties never formed a joint venture, and their friendship did rise to the level of a creating a fiduciary duty. Accordingly, Counts VII and VIII must be dismissed.

### E.     Piercing the Corporate Veil (Count IX)

Because Plaintiff is a corporation, Defendant may only recover from Mrs. Garza if it meets the requirements to pierce the corporate veil. An alter ego determination is reserved for exceptional cases. *In re Multiponics, Inc.*, 622 F.2d 709, 724–25 (5th Cir. 1980). Further, "[q]uestions of alter-ego typically involve fact intensive disputes of material fact and thus are usually more appropriate for summary judgment than a motion to dismiss." *Bilyea v. Johanson Berenson LLP*, 2010 U.S. Dist. LEXIS 110099, at *24 (W.D. La. Sep. 30, 2010); *RDS Real Estate, LLC v. Abrams Grp. Constr., LLC*, 2017 U.S. Dist. LEXIS 8180, at *19 (S.D. Miss. Jan. 20, 2017). Piercing the corporate veil is not an independent cause of action, but a vehicle to impose liability on a corporate officer for wrongdoing. *La. Newpack Shrimp, Inc. v. Ocean Feast of China, Ltd.*, 2021 U.S. Dist. LEXIS 26240, *24 (E.D. La. Feb. 11, 2021). The alter ego doctrine will apply only if "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003). The Fifth Circuit has clarified the second prong and held that, unlike in contract cases, a finding of fraud is not required when the underlying wrongdoing is a tort. *Jon-T Chemicals, Inc.*, 768 F.2d 686, 692–93 (5th Cir. 1985) (citing *Edwards Co. v.*

11

*Monogram Indus., Inc.*, 730 F.2d 977, 982 (5th Cir. 1984); *Nelson v. Int'l Paint Co.*, 734 F.2d 1084, 1092 (5th Cir. 1984)).

Here, because Defendant has not alleged fraud, their existing breach of contract claim cannot serve as the underlying wrongdoing. Rather, the sole remaining tort claim, Count X Tortious Interference with Contracts, is the only claim which Defendant can use to pierce the corporate veil. However, the questions presented to determine whether Defendant can pierce the veil are too fact-intensive to assess at the motion to dismiss level. Thus, the Court declines to dismiss Count X.

## F.   Interference with Prospective Business Relationships (Counts XI and XII)

Plaintiff moves to dismiss Defendant's claims for interference with prospective business relations, which are brought under both Texas and Louisiana law.

To succeed on a claim for tortious interference with prospective business contracts, a plaintiff must show:

(1) a reasonable probability that the plaintiff and a third party would have entered into a contractual relationship;

(2) that an independently tortious or wrongful act by the defendant prevented the relationship from occurring;

(3) that the defendant did act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct; and

(4) the plaintiff incurred actual harm or damage as a result of the defendant's interference.

*Brougton v. Livingston Indep. Sch. Dist.*, 2010 U.S. Dist. LEXIS 77141, at *41-42 (E.D. Tex. July 29, 2010). The plaintiff's conduct must be either independently tortious or unlawful, which means that the conduct must have violated some type of

tort duty. *Id.* at 42. A "general allegation does not allow the court to infer that [the defendant] willfully and intentionally interfered with specific [prospective contracts]." *ThermoTek, Inc. v. WMI Enters., LLC*, 2010 U.S. Dist. LEXIS 42131, at *25 (N.D. Tex. Apr. 19, 2011) (commenting on tortious interference with existing contracts but is applicable to prospective client relationships). There is a high bar to show intent for tortious interference with a prospective contract, because the plaintiff must also prove "that the defendant acted with malice." *Broughton*, 2010 U.S. Dist. LEXIS 77141, at *41 (quoting *Thrift v. Estate of Hubbard*, 44 F.3d 348, 357 (5th Cir. 1995)). Further, the plaintiff must actually identify the clients with whom plaintiff would have done business, but for the defendant's conduct. *Zhejiang Med. Co. v. Kaneka Corp.*, 2012 U.S. Dist. LEXIS 194644, at *14 (S.D. Tex. Aug. 13, 2012) (holding that alleging "'some' of [plaintiff's] existing and potential customers" does not identify clients).

In *Broughton v. Livingston Indep. Sch. Dist.*, the plaintiff merely alleged that defendant "acted to tortiously interfere with Broughton's prospective relations with public school districts in violation of the law of the state of Texas." 2010 U.S. Dist. LEXIS 77141, at *43. There was no mention of the underlying tortious conduct, so the court assumed the plaintiff was relying on the alleged business disparagement. *Id.* However, the court had in the same motion determined the cause of action for business disparagement was without merit, so the court held that the plaintiff failed to provide evidence of an independent tort. *Id.* Thus, Plaintiff's claim for tortious interference with prospective business relations failed. *Id.*

Here, Defendant provides a general allegation that does not allow the Court to infer that Plaintiff intentionally interfered with specific prospective business relations. In support of Counts XI and XII, Defendant only alleges:

> following the publication of Dong Phuong's defamatory statement in 2021, Gemini Society had meetings canceled with Prospective Client 1 and Prospective Client 2 . . . Historically, Gemini Society had a nearly 100% closing rate for new clients at the stage that they discontinued contact with Gemini Society.

(Rec. Doc. 69, at 35). First, Defendant fails to provide the underlying tortious conduct, because the Court above dismissed Defendant's claims for defamation in Counts V and VI. Second, Defendant fails to allege that Plaintiff acted intentionally with malice to interfere with Defendant's relationships with Prospective Clients 1 and 2. Third, Defendant does not identify who these business relationships involved.

For these reasons, Defendant has failed to state a claim for tortious interference with prospective business relationships, and this claim must be dismissed.

## G.   Misappropriation of Trade Secrets (Count XV)

Under the Defend Trade Secrets Act, "a plaintiff must allege (1) existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce." *Complete Logistical Servs., LLC v. Rulh*, 350 F.Supp. 512, 517 (E.D. La. Oct. 15, 2018) (citing 18 U.S.C. § 1836(b)(1)). A plaintiff must allege "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and

14

to permit the defendant to ascertain at least the boundaries within which the secret lies." *Am. Biocarbon v. Keating*, 2020 U.S. Dist. LEXIS 232752, at \*10 (M.D. La. Dec. 10, 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, 2018 U.S. Dist. LEXIS 48637, at \*4 (N.D. Cal. Mar. 23, 2018)). If only broad categories or conclusory statements are alleged, then the pleading does not describe the trade secrets with sufficient particularity. *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, 2021 U.S. Dist. LEXIS 99497, at \*6 (Nov. 10, 2021).

In *Am. Biocarbon v. Keating*, the Court found that the plaintiff failed to allege the existence of trade secrets with particularity. 2020 U.S. Dist. LEXIS 232752, at \*10. The plaintiff alleged the following were trade secrets: studies; know how; product development research; market research and strategies; client research; plant designs; and company financial information. *Id.* at 11. The Court held that plaintiff relied on vague and broad categories and dismissed the claim. *Id.* at 10-12.

Similarly, here, Defendant fails to allege the existence of trade secrets with particularity. Defendant identifies the following as trade secrets:

> comprehensive strategies for new and emerging markets, social media, product design and development, merchandizing, go-to market plans, e-commerce platforms, vendor relationships, market research, naming and product life-cycle strategies, roadmaps to focus sales and marketing efforts and to establish cross-selling opportunities, and other confidential business information.

(Rec. Doc. 69, at 47). Like the alleged trade secrets in *Am. Biocarbon*, these allegations are nothing more than vague and broad categories that do not allow Plaintiff to determine what the boundaries of the secrets are.

15

Defendant fails to allege the existence of a trade secret with particularity, and so, Count XV must be dismissed.

### H.    Breach of Contract (Count XVI)

Defendant brings a counterclaim for breach of contract under Texas law, while Plaintiff counters that Louisiana contract law should apply. When a federal court exercises supplemental jurisdiction over a state law claim, the court applies the choice of law rules of the forum state. *Janvey v. Brown*, 767 F.3d 430, 434 & n.10 (5th Cir. 2014).

Louisiana Civil Code article 3537 sets forth the choice of law rules governing contracts and obligations. Under article 3537, contracts are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code. 3537. However, there is no need to conduct a choice of law analysis if there is no meaningful difference between the relevant law of the two states. *Ross & Wallace Paper Prods. V. Team Logistics, Inc.*, 19-196, pp. 7 (La. App. 1 Cir. 07/0820), 308 So. 3d 346, 352 (citing *Champagne v. Ward*, 03-3211 (La. 01/19/05), 893 So. 2d 773, 786).

There is no meaningful difference between Louisiana and Texas breach of contract laws. Under Louisiana law, breach of contract has three elements: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (quoting *Favrot v. Favrot*, 1108-09, pp. 14-15 (La. App. 4 Cir. 2011), 68 So. 3d 1099, 1108-09). Under Texas law,

the elements for a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Eagle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). For these reasons, the Court declines to conduct a choice of law analysis for the breach of contract claim.

## I.     Unjust Enrichment (Count XIX)

Here, Defendant brings an unjust enrichment claim in the alternative to the other counts, which include breach of contract. Under Louisiana Civil Code art. 2298, "the remedy of unjust enrichment is subsidiary in nature, and shall not be available if the law provides another remedy." *Carlton v. Allstate Prop. & Cas. Ins. Co.*, 2021 U.S. Dist. LEXIS 143624, at *14 (July 31, 2021) (quoting *Walters v. MedSouth Rec. Mgmt., LLC*, 2010-0353 (La. 6/4/10), 38 So. 3d 243, 244). The remedy of unjust enrichment is "only applicable to fill a gap in the law where no express remedy is provided." *Id.* (citing *Mouton v. State*, 525 So. 2d 1136, 1142 (La. App. 1st Cir. 1998)).

Because Defendant has a legal remedy via their contracts, Defendant cannot pursue a claim for unjust enrichment.

## J.     Motion to Strike

Plaintiff argues that paragraphs 158-163 of Defendant's counterclaim should be stricken, as they are irrelevant and prejudicial to Plaintiff. These paragraphs include allegations that Plaintiff underpaid its employees and paid foreign workers

under the table. Plaintiff believes the allegations have no bearing on the instant case—a business dispute between it and Defendant.

In its opposition, Defendant asserts that the allegations are relevant to several of its claims and defenses. First, Defendant contends that the allegations are relevant to its right to terminate the license of the DP Bakeshop Logo. Second, the allegations are relevant to Defendant's counter-defense of unclean hands. Third, Defendant argues that the allegations are consistent with a broader pattern of deceit and unlawful actions that ultimately led to the rupture between the parties. Fourth, Defendant asserts that the allegations are relevant to Defendant's veil piercing claim.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(F). The decision to grant or deny a motion to strike lies within the sound discretion of the trial court. *Tarver v. Foret*, No. 95-1192, 1996 WL 3536, at *1 (E.D. La. Jan. 3, 1996). However, motions to strike under Rule 12(f) are disfavored and "should be used sparingly by the courts." *Pan-Am. Life Ins. Co. v. Gill*, No. 89-5371, 1990 WL 58133, at *2 (E.D. La. April 27, 1990) (internal quotations omitted). Furthermore, a "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2), pp. 2317-2318).

18

The issue before the Court is whether Plaintiff will suffer undue prejudice if its motion to strike is not granted. According to Plaintiff, Defendant included its past labor violations in its counterclaim "solely for the purpose of prejudicing Dong Phuong." (Rec. Doc. 79-1 at 23). On the other hand, Defendant has presented a variety of claims and defenses to which the past alleged labor violations may be relevant. Accordingly, the motion to strike will be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Rule 12(b) Motion for Partial Dismissal and Rule 12(f) Motion to Strike First Amended Counterclaim* **(Rec. Doc. 79)** is **GRANTED IN PART** and **DENIED IN PART**, as follows:

A. Summary judgment to dismiss Counts I, II, and III (declaratory judgments) is **GRANTED** to the extent they seek relief under the Texas Declaratory Judgment Act;

B. Summary judgment to dismiss Counts III and IV (DP Bakeshop Mark Ownership and Trademark Infringement) is **DENIED**;

C. Summary judgment to dismiss Counts V and IV (Defamation) is **GRANTED**;

D. Summary judgment to dismiss Counts VII and VIII (Breach of Fiduciary Duty) is **GRANTED**;

E. Summary Judgment to dismiss Count X (Piercing the Corporate Veil) is **DENIED**;

F. Summary Judgment to dismiss Counts XI and XII (Interference with Prospective Business Relationships) is **GRANTED;**

G. Summary Judgment to dismiss Count XV (Misappropriation of Trade Secrets) is **GRANTED**;

H.  Summary Judgment to apply Louisiana law to Count XVI (Breach of Contract) is **DENIED**;

I.  Summary Judgment to dismiss Count XIX (Unjust Enrichment) is **GRANTED**; and

J.  Plaintiff's motion to strike paragraphs 153-168 is **DENIED.**

**IT IS FURTHER ORDERED** that the Court will not entertain any

additional motions to dismiss filed after the date of this Order.

New Orleans, Louisiana, this 28th day of March, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE